SUTTON, Circuit Judge,
concurring.
CONCURRENCE
“Let us pray.” Or “Let me pray.” “Please join me in prayer.” Or “Please join me, if you wish, in prayer.”
“Please stand reverently as we pray.” Or “Please stand reverently, if you wish, as ■ - we pray.”
“Council member Smith will now offer a prayer.” Or “Our chaplain will now offer a prayer.”
“We pray these things in Jesus’s name.” Or “We pray these things in God’s name.” “We pray these things in God’s name” while making the sign of the cross.
Or “We pray these things in God’s name” without making the sign of the cross.
In telling Congress and eventually the States that they “shall make no law respecting an establishment of religion,” the First Amendment does not preference any of these options. Nor does the guarantee suddenly spring into action based on the percentage of invocation prayers given in one faith tradition over time—25%?, 50%?, 75%?, 100%?—so long as the governmental body does not exclude prayers because of their content. .
Good manners might have something to say about all of this and how it is done. So too might the Golden Rule. But the United States Constitution does not tell federal judges to hover over each town hall meeting in the country like a helicopter parent, scolding/revising/okaying • the content of this legislative-prayer or that one.
Instead of asking judges to referee what will inevitably become arbitrary lines and thus will run the risk of becoming judge-preferenced lines, case law looks to American historical practices to determine what the Establishment Clause allows and what it does not. History judges us in this 'area. We do not judge history. For all of American history, such prayers have been allowed, whether invoking Jesus, God, or something else, whether by. government-paid chaplains or by the elected officials themselves. And for all of American history, the United States Supreme Court'has *522 authorized such prayers. No one doubted the practice for most of our history. And when challenges to the practice first arose about thirty-five years ago, the Supreme Court made clear that such prayers are constitutional so long as they do not coerce non-believers. See Marsh v. Chambers, 463 U.S. 783, 103 S.Ct. 3330, 77 L.Ed.2d 1019 (1983); Town of Greece v. Galloway, — U.S. —, 134 S.Ct. 1811, 188 L.Ed.2d 835 (2014).
One point on which we can all agree is that the solemnity of the occasion, then and now, makes spiritual invocations a permissible way to begin work on behalf of the People—in legislative bodies, executive proceedings, or court hearings. I am not aware of a single opinion by a Justice of the United States Supreme Court or by a Judge of our Court who doubts that point.
The point on which we have trouble agreeing is what terms individual chaplains and individual elected officials may use in offering such invocations. But here’s the rub: If the explanation for an invocation prayer is the humble act of seeking divine guidance before a session of government, is it not strange for judges to interfere with the content (e.g., God, Allah, or Jesus) or symbols (e.g., making the sign of the cross or not) of that official’s prayer? Why permit legislative prayers, then call them a trespass when done sincerely in the manner traditionally used by that individual? So long as the prayer giver does not try to coerce anyone into adopting their faith, so long in other words as the individual gives an invocation, not an altar call, I see no meaningful role for judges to play.
No less importantly, does the prohibition on establishing any one religion really require us to pick one set of the above invocation options over the other? Do we really want to go down the road of telling people how to pray? There would be some irony in accepting this invitation. We have whole bodies of law connected to adjacent guarantees of the First Amendment that confirm the perils of allowing government officials to regulate the content of speech, and still more the content of a religious exercise, unless absolutely necessary. At some point judicial prescription prevents the words of an invocation prayer from being a prayer at all. The courts in this country have set their example by using “God,” as in “God save the United States and this Honorable Court.” Others are free to follow the courts’ example and perhaps learn from it. But with the exception of prohibiting coercion or proselytization, I doubt the federal courts can do anything better than teach by example and trust Americans in large cities and small hamlets to respect our many traditions and to live and learn over time through the experience of using different invocation practices.
Even references to “God,” which make most people comfortable, are not a balm for everyone. It’s a multi-perspective word, yes. But it’s not an all-perspective word, as Mr. Bormuth’s position in this case confirms. In his view, none of the options listed at the outset of this opinion satisfies the Establishment Clause. All references to any one faith or to religion in general, he says, must be removed from governmental proceedings. Who is coercing whom under that approach? And what are we establishing?
In resolving cases of this sort, I would be mindful about what we are “walling in or walling out.” Governmental bodies, courts included, usually strive to be respectful of the diversity of faiths in any one town, region, or the country as a whole. As well they should. But what really counts as respect? And what really counts as tolerance? Different perspectives abound. For some, it’s too much information to listen to an individual’s traditional *523 way of praying. For others, it conveys more respect, not less, when the individual invokes their God authentically and un-guardedly and in the process offers a glimpse into who they are. I am reticent to favor one perspective over the other.
Either way, none of this should obscure the broader point that the terms of the Constitution and the words of our cases do not require, or even allow, us to parse highly personal offerings on the basis of our intuitions or social conventions about how best to foster religious sensitivity in America. Who can say when a prayer offered with humble fervor has too much fervor and too little humility? That’s not a line the Constitution asks us to draw, and any efforts to innovate one are apt to do more harm than good for the cause of tolerance.
The idea that the Establishment Clause favors chaplain-led prayers over legislator-led prayers is particularly puzzling. Prayers by their nature are personal, even when offered in a public setting. It is a petition by the individual, not the State or City. And that’s the way most people perceive them given our long history of permitting such invocations. Just as we would not mistake a legislator’s reference to his or her faith during a floor debate as an establishment of religion, we should not make that mistake when they invoke their personal faith as part of an invocation. But if there is a message-sending risk with invocation prayers, I would think it grows, rather than diminishes, when the governmental body hires a faith leader (necessarily of one faith) to say the prayers. A government-sponsored faith leader seems closer to an establishment than allowing each official to pray however they wish or to offer no prayer at all.
How, after all, does a pattern of legislator-led prayer with respect to one faith coerce citizens to follow that faith in a way that chaplain-led prayer of a single faith does not? If the elected officials offer an invocation prayer in their own personal way, that coerces no one. If anything, risks of endorsement and any other risks at the outer edges of the Establishment Clause cases increase if the government must hire a chaplain to permit an opening prayer. And if Mr. Bormuth succeeds, that of course will be the remedy: Hire a minister. Does that solution really satisfy the concerns of those inclined to adopt it? And what of a legislator who is also a person of the cloth? Could John Danforth but not John McCain give an invocation? When a line offers no meaningful distinctions, it is a good time to ask whether the court should draw it.
One last point deserves emphasis. There is no cognizable evidence that the council excluded any commissioner who asked to give a prayer or who chose not to give a prayer. And there is no evidence that the council adopted its invocation practice with the goal of favoring this religion or that one. The practice was around long before Mr. Bormuth entered the scene, whether in this town or in many others around the country. In a country of this size and diversity, with thousands of local governmental bodies, it should surprise no one that some small towns have elected officials of one faith. Just as many people of like-minded political views sometimes live in the same area, so too do many people of like-minded faiths sometimes live in the same area. That is inevitable in such a large country. Nor is that the only inevitability in this area. Just as often, more often in fact, our pluralism leads to a greater diversity of faith and a greater diversity of prayer across the country or in some instances increases the pressure to abandon invocation prayers altogether. The Establishment Clause does not place a thumb- on these local choices.
*524 What I have' said so far - addresses the main issues presented at the panel stage of this case and the main issues joined at that stage. At the en banc stage, considerable attention has been given to the discovery-issues and the reaction of a few Council members to Mr. Bormuth’s complaints. Just as I join Judge Griffin’s fine opinion in full with respect to the general legal principles in this area, I join his opinion in full with respect to the other features of this case.-Let me add a few points as to these other issues.
Mr. Bormuth cannot have it both ways. He filed this case as a pro.se litigant and insisted on not having an attorney, even when one was offered. Having refused to take an attorney, he is not entitled to relaxed pleading standards or relaxed motions standards of the sort we sometimes give to pro se litigants.
Virtually all of the evidence that Mr. Bormuth now wants us to consider is not admissible or even in the record. And it was he, not the county, who first moved— twice—for summary judgment. At the summary judgment phase of a case, parties no longer may rely on the pleadings. To generate a material dispute of fact, they must cite “particular parts of ... the record” or show the absence of supporting evidence on the other side. Civil Rule 56(c)(1).. Rule 56 expressly limits what we may consider to “materials in the record,” Civil Rule 56(c)(3), a mandate that applies to all parties—represented or not, willing to accept representation or not.
All of this means we may not consider most of the “evidence” on-which Mr. Bor-muth now relies: the. “Pandora’s Box” comment; the “nitwit” remark;' the “political correctness nonsense” remark; and the absence of prayer in a meeting without public attendance. A complaint is not evidence. Briefs are not evidence. And Bor-muth never asked the district court to take judicial notice of any specific video or videos. The closest he came to introducing the videos was an attachment to his motion for summary judgment. All he did, however, was recite various prayers given at the town council meetings and cite the online videos as his source. But his transcriptions did not include any of the comments or incidents mentioned above. They included only a selection of the prayers given during invocations.
The district court also did not abuse its discretion in rejecting Bormuth’s request to depose Council members about their invocation prayers.' It concluded that courts should “focus not on the personal motives or biases'of government officials, but rather on the objective content of the prayer, the impact it has on the listeners, and any situational aspects of it that could be unduly coercive.” An invocation prayer does not become unconstitutional under the Establishment Clause, .or for that matter become constitutional under the Clause, based on the subjective motives of the individual who gave it. Even when the Court has invalidated a display under the Establishment Clause, it- did not do so based on the subjective purposes of the local officials. See McCreary County v. ACLU, 545 U.S. 844, 861-63, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005).
But if one prefers to ignore the conventional rules for resolving 'summary judgment -motions, I would ignore them in full. Other materials, including lower court decisions mentioned in one of the amicus briefs, and all of the videos, show why the council members became frustrated with Mr, Bormuth and confirm that this frustration had little to do with his religious beliefs and more to do with his methods of advocacy. This was not his first legal grievance, to put it mildly. See, e.g., Bormuth v. City of Jackson, No. 12-11235, 2013 WL 1944574, at *2 (E.D. Mich. May 9, 2013) *525 (chronicling Bormuth’s penchant for “in-jeet[ing] into'the record venomous, irrelevant, and gratuitous commentary”); Bormuth v. City of Jackson, 12-11235, 2012 WL 5493599, at *1-2 (E.D. Mich. Nov. 13, 2012) (denying Bormuth’s claim that he suffered religious discrimination when, as in his words “one of the best poets in Jackson County” and a “rare ‘druidic bard,’ ” he was asked to stop attending a community college’s poetry readings); Bormuth v. Dahlem Conservancy, 837 F.Supp.2d 667, 670 (E.D. Mich. 2011) (denying Bormuth’s religious discrimination claim against a private non-profit nature center that asked Bormuth to stop visiting after he emailed this threat: “tell your groundsman that the next time I see him driving that diesel cart just because he is too la[z]y to walk [I] will ... have the spirits drop a widow maker on him putting him in a wheel chair the rest of his life.”); see also Bormuth v. Johnson, No. 16-13166, 2017 WL 82977, at *3 (E.D. Mich. Jan. 10, 2017) (rejecting his claim that his loss in the Democratic primary was due to a “deliberate attempt by [a] Christian”— the Secretary of -State—“to deny a Pagan candidate” a fair election); In re Peter Carl Bormuth, No. 13-1194 (6th Cir. Apr. 23, 2013) (rejecting his mandamus action seeking the recusal of a judge who was a Christian); Bormuth v. Grand River Envtl. Action Team, No. 321865, 2015 WL 6439007 (Mich. Ct. App. Oct. 22, 2015) (rejecting his claim that he should be able to conduct groundwater tests on a nonprofit’s property).
During the en bane oral argument, the lawyer for the county acknowledged, quite properly, that the council members should not have expressed their frustration with Mr. Bormuth—or for that matter- with anyone else who brings a matter to the council. But in the context of these other legal disputes, it is a bit rich to say that the council members reacted, negatively to him due to his spiritual views in particular or to his position on council prayers in general.